The Honorable W. R. "Bud" Rice State Representative P.O. Drawer H Waldron, AR 72958
Dear Representative Rice:
This is in response to your request for an opinion on the following questions:
 1. Under Act 861 of 1989 or any other statute or regulation, when does the responsibility of a community mental health center begin? What is the extent of this responsibility? In other words, if there is a screening by the center of an indigent patient in connection with an involuntary commitment, does that patient become the Center's patient as a result of that screening?
 2. Does the Center's responsibility extend to finding a bed if inpatient treatment is required? Does that extend to paying for a bed if one is not available with Arkansas State Hospital? Does the Center receive money from the State to provide inpatient services (inpatient including the payment of room and board at state or private institutions)?
With regard to your first question, we cannot offer a conclusive response due to the breadth of this inquiry. If this question pertains, for example, to someone who is referred to a community mental health center ("center") by court order for screening and evaluation, A.C.A. 20-46-310 states that mental health centers which have been approved by the Director of the Department of Human Services ". . . shall provide, upon request of the courts of record in this state, screening and evaluation studies of such persons as shall be referred to the mental health center or clinic by the court." The center's responsibility would, it seems, begin when the court referral is made and would extend to the screening and evaluation in accordance with and under the terms of the court order.
Our research has not yielded a statutory provision addressing whether or not the person is a "patient" as a result of such a screening and evaluation, nor have we discovered any provision of state law attaching particular significant (sic) to one's designation as such.
If the screening is an "initial screening" under A.C.A. 20-47-201 et seq. (Supp. 1989) (see A.C.A.20-47-202(h) (Supp. 1989) for definition of "initial screening"), the subject of the screening would not, it seems, be a "patient" for purposes of inpatient services until there is a determination that the individual meets the criteria for voluntary or involuntary admission.
With regard to your second question, a review of the revised 1985 Standards for Community Mental Health Centers and Clinics in the State of Arkansas indicates that each Center must provide 24-hour emergency services to any person regardless of residence if it is determined that an emergency exists. Standard IV.B.1. The Standards also state that "[a]ppropriate community-based inpatient services should be accessible to residents of the catchment area and immediately available." Standard IV.C.2.
The above language suggests that the answer to the first part of your second question with regard to inpatient treatment is "yes", as to residents of the catchment area. With regard to the remaining parts of this question, the appropriation act for personal services and operating expenses of the Department of Human Services may offer some guidance. Acts 1989, No. 944. Community mental health centers receive "State Assistance" under Section 8, Item 1 of Act 944 of 1989, and these funds are apportioned ". . . on the basis of three dollars and seventy-three cents ($3.73) per capita for fiscal year 1989-90 and three dollars and ninety-five cents ($3.95) per capita for fiscal year 1990-91. . . . See Section 14 of Act 944 of 1989. The fact that the centers' receipt of this "state assistance" is on a "per capita" basis indicates that the centers do receive money from the state on the basis of services provided. The receipt of funds is also conditioned in part upon compliance with the minimum standards. Acts 1989, No. 944, Sec. 16(1). The state has, therefore, perhaps indirectly, established the center's responsibility for "paying for a bed."
With regard to payment of room and board at state or private institutions, we are constrained to note that at least one county probate court has ordered a center's payment of in-patient care and treatment costs until such time as a bed was available at the state hospital. See Sebastian County Probate Court No. P-90-144. While this case does not provide state-wide precedent, I am not in a position to question the propriety of this judicial action, and thereby indirectly suggest a course of action in defiance of a court order. Where questions exist surrounding the propriety of judicial action in relation to particular matters, I believe that the remedies available within the judicial forum are more appropriate than the issuance of an opinion from my office which, under these circumstances, would in essence amount to no more than an executive comment on a judicial ruling. Nothing short of a final decision by the appropriate court, and/or clarifying legislative or regulatory language, can resolve such matters.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
[1] The Standards for Community Mental Health Centers and Clinics in the State of Arkansas, revised 1985, state that when a person is seen on a "one-time-only basis by the Center for direct services and does not become a client of the Center, a formal patient chart need not be opened." See Standard IV.A.1.